UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:

                                                      Case No. 812-71471-reg

BC FUNDING, LLC,

                                                      Chapter 11

                   Debtor.
------------------------------------------------------------------x
BC LIQUIDATING, LLC,

                   Plaintiff,              Adv. Proc. No. 814-8083-reg

vs.

BARRY SHARF,

                   Defendant.
------------------------------------------------------------------x
In re:

                                                      Case No. 813-71909-reg

BARRY SHARF,

                                                      Chapter 7

                   Debtor.
------------------------------------------------------------------x
BC LIQUIDATING, LLC,

                   Plaintiff,              Adv. Proc. No. 814-8084-reg

vs.

BARRY SHARF,

                   Defendant.
------------------------------------------------------------------x

**MEMORANDUM DECISION**
**(Re: Motions to Dismiss)**

      Before the Court is a motion by the Defendant, Barry Sharf ("Sharf"), to dismiss the claims against him in these two adversary proceedings. The complaints against Sharf in these proceedings are identical. One was filed in Sharf's individual chapter 7 bankruptcy case

("Individual Case"), the other in the corporate chapter 11 case of BC Funding LLC ("BCF" and "BCF Case"). The Plaintiff in these proceedings is BC Liquidating, LLC ("BC Liquidating" or "Plaintiff"), an entity established pursuant to BCF's confirmed chapter 11 plan for the purpose of liquidating and distributing assets of the BCF bankruptcy estate, including certain causes of action, for the benefit of BCF's creditors.

In the complaint, the Plaintiff seeks (a) to determine that Sharf's debt to the Plaintiff in the approximate amount of $7 million dollars stemming from Sharf's alleged fraud and looting of the corporate debtor, BCF, based on alleged RICO violations, breach of fiduciary duty and conversion of BCF assets, is non-dischargeable pursuant to 11 U.S.C. §523(a)(4) and (a)(6), and (b) relying on Sharf's status as an insider of BCF, to deny Sharf's discharge pursuant to 11 U.S.C. §727(a)(7) for his actions in connection with the BCF Case, and (c) if Sharf's individual discharge is denied, then to recover allegedly fraudulent and preferential transfers made to Sharf from BCF assets within the applicable reach back periods.

In a related adversary proceeding against multiple defendants (No. 14-8082, the "RICO Complaint"), the Plaintiff has alleged that Sharf, in concert with those defendants (the "RICO Defendants"), masterminded a scheme to fraudulently elicit investments of over $7 million from third parties that while ostensibly for BCF were really intended to be used by Sharf and the RICO Defendants for their personal gain.[1] The Plaintiff alleges that Sharf and the RICO Defendants then diverted BCF assets through the escrow account of BCF's lawyer to numerous affiliated or controlled entities where the funds were then distributed for the personal benefit of Sharf and the RICO Defendants to the detriment of BCF. The causes of action asserted in the RICO Complaint include RICO violations, fraud, aiding and abetting fraud, breach of fiduciary

---

[1] Sharf was not joined as a defendant in the RICO Complaint. According to the Plaintiff, he was not joined "because of [Sharf's individual] Chapter 7 filing." (Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss by Barry Sharf, Dkt. #14, at 9).

duty, aiding and abetting breach of fiduciary duty, conversion, aiding and abetting conversion, unjust enrichment, constructive trust, accounting, preferences and fraudulent transfer.

Familiarity with the facts alleged in the RICO Complaint is presumed as those allegations have been set forth in detail in this Court's Decision, dated October 31, 2014, denying motions to dismiss the RICO Complaint by certain of the RICO Defendants.

Sharf has filed identical motions to dismiss the adversary proceedings filed against him in the Individual Case and the BCF Case. For the reasons that follow, Sharf's motion to dismiss will be denied in both cases.

## DISCUSSION

Sharf's first argument is that the complaint filed against him in the BCF Case should be dismissed as an intentional violation of the section 362 stay imposed by his Individual Case. He argues that in the complaint the Plaintiff seeks to recover a claim that arose against the Debtor pre-petition and such action is clearly contrary to section 362(a). In response, the Plaintiff explains that it filed the complaint against Sharf in the BCF Case solely to avoid any argument that it failed to name Sharf, an indispensable party to the RICO Complaint. Docketing the identical complaint that was filed in the Individual Case, Plaintiff argues, was a "mere ministerial" act which did not violate the automatic stay. In addition, Plaintiff argues that nothing in the Bankruptcy Code requires stay relief to file a discharge or dischargeability complaint against a debtor and the fact that both complaints were filed before the same Judge mitigates or eliminates any stay violation.

Clearly, the filing of the complaint against Sharf in the Individual Case was not a violation of the automatic stay. The only question is whether the filing of the identical complaint

in the BCF Case violated the stay in the Individual Case in that it seeks to establish a liability against Sharf on account of a pre-petition debt.  11 U.S.C. §362(a)(1).  To the extent that the complaint against Sharf seeks to establish liability on a pre-petition claim, the Court finds that the Plaintiff did not violate the automatic stay because any such determination as to liability would merely be ancillary to the claims allowance process.  Prior to the filing of these adversary proceedings, the Plaintiff filed a proof of claim (No. 11) in the Individual Case, asserting a claim in excess of $10,000,000 arising from Sharf's alleged wrongful conduct in connection with the operations of BCF prior to and during the BCF Case.  Unless and until an objection to the claim is filed, the filing of the proof of claim constitutes "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).  It is Sharf's liability on the claim that will form the basis for the section 523(a) non-dischargeability causes of action – specifically, whether Sharf's conduct that gave rise to the claim falls within section 523(a)(4) or (a)(6).  If the Plaintiff's proof of claim is objected to, a trial on the merits of the claim will mirror the allegations of the complaint.  If no objection to claim is filed, then a determination under section 523(a) will still involve some, if not all, of the same factual allegations that are raised in the complaint.

In addition, the Court is sympathetic to the Plaintiff's argument that the claims against the RICO Defendants may be vulnerable for failure to join a necessary party if an affirmative claim for these violations were not made against Sharf.  The Court is not prepared to find that the Plaintiff's filing of the identical complaint against Sharf in the BCF Case as a prophylactic measure amounted to a violation of the automatic stay in the Individual Case.[2]

---

[2]  The 12th through 18th causes of action of the complaint seek to establish liability against Sharf for alleged preferential and fraudulent transfers to Sharf from BCF assets, *but only if* Sharf's individual discharge is denied.  Thus, the Complaint specifically contemplates that resolution of these claims will be stayed until resolution of the section 727 allegations.

Next, Sharf argues that the Plaintiff does not have standing to assert the causes of action alleged in the complaint under the *Wagoner* Rule. *See Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 117 (2d Cir. 1991), and its progeny.[3] Sharf's argument is flawed. The *in pari delicto* doctrine, and by extension the *Wagoner* Rule, "bars claims against third parties, but does not apply to corporate insiders or partners." *In re Granite Partners, L.P.*, 194 B.R. 318, 332 (Bankr. S.D.N.Y. 1996); *SIPC v. Madoff*, 987 F.Supp.2d 311, 320-22 (S.D.N.Y. 2013) (recognizing the "insider exception" to the *Wagoner* Rule). The complaint alleges, and it is hardly subject to dispute, that Sharf as CEO and manager of BCF was an insider of BCF and a fiduciary. Thus, the *Wagoner* Rule does not bar the Plaintiff's standing here.

Sharf also seeks to dismiss each of the Plaintiff's section 727(a)(7) claims for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Section 727(a)(7) provides that Sharf's individual discharge may be denied if he "committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, *in connection with another case,* under this title or under the Bankruptcy Act, concerning an insider." 11 U.S.C. §727(a)(7) (emphasis added). Sharf's individual bankruptcy petition was filed on April 12, 2013 and so the one year period applicable under section 727(a)(7) would be April 12, 2012 to April 12, 2013.

Initially Sharf argues that each of the section 727(a) claims against him must be dismissed because they allege Sharf's failures in connection with the BCF case and the assets and documents in that case, not his Individual Case. He argues, under section 727(a)(2)(A) and (B) that the property alleged to have been transferred or concealed has to have been *his* property or *his* estate's property, as opposed to BCF's or the BCF estate's property. To the contrary,

---

[3] Familiarity with the *Wagoner* Rule is presumed for purposes of this Decision.

when read in connection with section 727(a)(7), the reference in section 727(a)(2)(A) and (B) to "property of the debtor" or "property of the estate" refers to the property of the *related* debtor or the *related debtor's* estate, not the debtor against whom the claim is asserted or his estate. This same analysis applies to the causes of action under sections 727(a)(3), (4), and (5) incorporated by reference into section 727(a)(7). If the Court were to accept Sharf's reading of the statute there would be no purpose to section 727(a)(7) incorporating the acts of the individual into the related corporate case.

Even assuming it is appropriate to allege Sharf's failures in connection with the BCF case, Sharf argues that each of the section 727(a) claims must be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The Court will address each subsection in turn.

Relying on sections 727(a)(2)(A), (B) and (a)(7), the Plaintiff alleges that "in the year prior to the filings and/or during the Bankruptcy Cases, Sharf moved, concealed and/or transferred money and/or assets, including [] Insurance Policies and money belonging to BCF and its creditors, or permitted such money or assets to be removed, concealed and/or transferred . . . [and that these] Transfers were effectuated by Sharf directly, or indirectly, through the use of Sharf's attorneys' escrow accounts and BCF's attorneys' escrows accounts. . . . [and that] Sharf made these Transfers with the intent to hinder, delay, and/or defraud his creditors including [the Plaintiff, BC Liquidating.]" (Complaint ¶¶124-137). Sharf argues that the transfers of BCF property alleged in the complaint occurred from 2007 to 2011 which is outside of the 1 year look back provided for in section 727(a)(7). In response, Plaintiff argues that the complaint sufficiently alleges transfers by Sharf of BCF assets in the year prior to Sharf's bankruptcy filing. Specifically, the Plaintiff points to paragraphs 117 through 122 of the complaint which allege that on September 11, 2012 and December 13, 2012, Sharf changed the ownership of certain life

insurance policies from BCF to Sharf personally, and changed the beneficiaries on certain policies from HTI and BCF to his children, Samantha and Hunter Sharf. (Complaint ¶¶117-122). In addition, the Plaintiff cites to facts outside the complaint about Sharf's alleged use of a BCF Chase card to pay for personal expenses and argues that Sharf's charges on that credit card, as well as other transfers to an entity, Hunt Ashley, owned by Sharf and his wife were within the one year period prior to, and continuing into, Sharf's Individual Case. Sharf objects to the Plaintiff's reference to factual allegations outside the four corners of the complaint, and with respect to the insurance policies he argues that those were his property not BCF's. However, even if the Court does not consider the additional factual allegations, the Court finds that the allegations regarding the insurance policy transfers is sufficient to withstand Sharf's motion to dismiss this cause of action. Whether the insurance policies were Sharf's or BCF's property, and/or whether there were transfers of other BCF property made within the one year period of section 727(a)(7), are issues of fact to be determined at trial and are not appropriate to consider on a motion to dismiss.

Under sections 727(a)(3) and (a)(7), the Plaintiff alleges that within one year of Sharf's Individual Case filing, Sharf "failed to retain and preserve the BCF Documents consistent with the APA[4] thereby hindering BCL's investigation into Sharf's activities as Manager and CEO, and/or other transfers and transactions of BCF and to third parties, including any fraudulent transfers, preferences, conversion, diversion and/or theft of BCF's assets. . . and [he] mischaracterized multiple entries on the BCF Documents in an effort to conceal or falsify information concerning the true nature of certain transfers of the assets of BCF." (Complaint ¶¶138-145). Despite Sharf's arguments to the contrary, the Court finds that the complaint

---

[4] The APA is defined in the complaint as the Asset Purchase Agreement, approved by this Court's Order, dated August 3, 2012, and effectuating the transfer of BCF assets to Strategic Funding Source, Inc. (Complaint ¶5).

sufficiently sets forth a plausible claim under section 727(a)(7) with respect to section 727(a)(3). Although Sharf argues that he was not the person responsible for maintaining BCF documents during this period of time, the fact is that Sharf was the CEO and Manager of BCF at least for part of that one year period of April 2012 to April 2013 and the Plaintiff should have the opportunity to prove that Sharf bore some, if not all, responsibility for the maintenance of BCF documents during that time.[5] Sharf will have the opportunity at trial to refute the allegations of the complaint; at this stage in the proceedings the Court finds that the complaint sufficiently pleads a plausible claim under sections 727(a)(7) and (a)(3).

Under sections 727(a)(4) and (a)(7), the Plaintiff alleges that it issued a subpoena to Sharf to turn over certain documents including "BCF documents and information directly related to the assets of BCF, the financial condition of BCF and the business transactions of BCF. . . . [and] Sharf has knowingly and fraudulently, failed to turn such documents over to [the Plaintiff]. . . . and the failure to produce these documents to [the Plaintiff] makes it difficult to ascertain the location and disposition of BCF's assets and limits the ability of [the Plaintiff] to administer the BCF Bankruptcy Case." (Complaint ¶¶146-157). Sharf argues that the Plaintiff has not plead the "knowing" and "fraudulent" element of this claim with sufficient particularity, and that in May of 2013 when the relevant documents were requested of him, he no longer had access to those documents.

First, when read in the context of the allegations of the entire complaint and the fraudulent scheme alleged therein, the Court finds that the Plaintiff has sufficiently plead the knowing and fraudulent elements of section 727(a)(4). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts must consider the complaint in its entirety").

---

[5]  Sharf signed the BCF monthly operating reports through December 2012 and he admits that he did not leave BCF's employ until August of 2012.

Second, as with the other claims, any argument by Sharf that he did not have access to the BCF documents requested is a defense to be raised at trial.

The complaint further alleges under section 727(a)(5) that "Sharf has failed to satisfactorily explain the loss of assets or a deficiency of assets which left BCF unable to meet its liabilities." (Complaint ¶¶158-162). Again, read in the context of the entire complaint, the Court finds that the Plaintiff has sufficiently plead a plausible claim under section 727(a)(5) and (a)(7) and any other argument Sharf makes in his defense is properly raised at trial.

In addition to seeking to deny Sharf's discharge in its entirety, the Plaintiff asks this Court to determine that Sharf's liability to the Plaintiff in an amount equal to not less than $7 million is non-dischargeable under 11 U.S.C. §523(a)(4) and (a)(6). To establish the liability the Plaintiff refers to claims against Sharf for breach of fiduciary duty to BCF, self-dealing, waste and diversion of BCF assets, conversion of BCF assets, and RICO violations. The Plaintiff argues that assuming liability on one or more of these claims is established, the resulting debt to Plaintiff should be found to be non-dischargeable because the debt would be "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," 11 U.S.C. §523(a)(4), or "for willful and malicious injury by the debtor to another entity or to the property of another entity; . . ." 11 U.S.C. §523(a)(6).

Sharf seeks to dismiss the section 523 claims based on RICO allegations arguing that RICO has not been sufficiently plead in the complaint. However, in this Court's Decision, dated October 31, 2014, the Court found that the RICO allegations against the RICO Defendants were sufficiently pled. The allegations against the RICO Defendants and Sharf with respect to the RICO and related liability are nearly identical. For the same reasons the Court declined to

dismiss the complaint as against the RICO Defendants, the Court will not dismiss those claims against Sharf.

If Sharf ultimately is denied his discharge under any one of the Plaintiff's section 727 claims, the Complaint also seeks to recover allegedly preferential and fraudulent transfers made to Sharf within one year and six years, respectively, prior to the BCF Case filing.[6]  Sharf argues that these avoidance actions should fail because (i) the alleged transfers to Sharf were transfers of Sharf's own assets, not BCF assets, (ii) the complaint does not allege the "antecedent debt" necessary for a preference action, and (iii) the alleged transfers to Sharf were for compensation owed to him by BCF.  The complaint, however, alleges that the transfers to Sharf were BCF assets, and for purposes of a motion to dismiss for failure to state a claim, the Court must accept the factual allegations as true.  The remainder of Sharf's arguments with respect to the avoidance actions are defenses properly raised at trial.

## CONCLUSION

For all of the foregoing reasons, Sharf's motion to dismiss will be denied.  An Order consistent with this Memorandum Decision will issue forthwith.

Dated: Central Islip, New York
December 1, 2014

>    */s/ Robert E. Grossman*
>    Hon. Robert E. Grossman, U.S.B.J.

---

[6] If Sharf's discharge is not denied under section 727, then presumably Plaintiff would consent to dismissal of the preference and fraudulent conveyance claims.